UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SABRINA JANINA BOSTON** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 22-142** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "L" (5)** |

### REPORT AND RECOMMENDATION

Plaintiff Sabrina Janina Boston filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for Supplemental Security Benefits ("SSB") under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and the issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

**I.   BACKGROUND**

Plaintiff filed her application for SSB on March 1, 2019, alleging a disability onset date of January 1, 2017, later amending it to February 5, 2019. (Rec. doc. 11 at 16, 268). Plaintiff alleged disability due to disorders of her back and bipolar depression. (*Id.* at 290). Plaintiff, born on November 29, 1975, was 42 years old on the date on which she alleged onset of disability and 44 years old on the date that she filed her application. (*Id.*). Plaintiff has an eleventh-grade education, (*id.* at 291), and she has past work experience as a cashier/prep/cook, a housekeeper, and a hair cutter. (*Id.*).

Defendant initially denied Plaintiff's application in June 2019. (*Id.* at 70). Plaintiff sought an administrative hearing, which took place as a supplemental hearing on June 20,

2021.  (*Id.* at 40-69).  Plaintiff and a vocational expert ("VE"), Mary Downing, testified at that hearing.

On July 23, 2021, the ALJ issued a decision concluding that Plaintiff was not disabled through the date of her application.  (*Id*. at 16-28).  In the decision, the ALJ concluded that Plaintiff has the severe impairments of cervical and lumbar degenerative disease, degenerative joint disease of the bilateral shoulders, obesity, generalized anxiety disorder, and schizoaffective disorder.  (*Id.* at 18).  The ALJ held that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listed impairment under the regulations.  (*Id.* at 19).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work activity as defined in 20 C.F.R. § 404.1567(b) except that she should avoid (1) climbing ladders/ropes/scaffolds and (2) work involving dangerous/hazardous machinery or unprotected heights.  (*Id.* at 21).  She can engage in work involving simple/routine tasks in a low stress work environment (*i.e.*, involving occasional decision-making and occasional adaptation to workplace changes).  (*Id.*).  She can tolerate occasional contact with supervisors and coworkers and cannot work in groups larger than ten people.  (*Id.*).  Contact with the public must be incidental to the work being performed.  (*Id.*).

The ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a silver wrapper, a cleaner, a marker, a document preparer, a ticket checker, and an addresser.  (*Id.* at 27).  The ALJ thus concluded that Plaintiff was not disabled from February 5, 2019 through the date of the opinion.  (*Id.* at 28).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she was not disabled before February 5, 2019.  On July 19, 2021, the Appeals Council denied Plaintiff's appeal.  (*Id.* at 2-7).  Plaintiff then timely filed this civil action.

## II.   STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).  If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  It is more than a scintilla but may be less than a preponderance.  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360.  The Commissioner is entitled to make any finding that is supported by substantial evidence,

3

regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable not only to do previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work that exists in significant volume in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a

five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under step five of the five-part test, the Commissioner must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step five also

5

requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUE ON APPEAL

There is one issue on appeal as framed by Plaintiff:

(1) Whether the ALJ properly assessed Plaintiff's ability to adapt and manage herself.

## V. ANALYSIS OF THE SOLE ISSUE ON APPEAL

At step three of the sequential evaluation process, a claimant will be found disabled if her impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet a mental listing based on the "paragraph B" criteria, the mental impairment must result in one extreme limitation or two marked limitations in one of the four broad areas of functioning. 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). These four areas of functioning include (1) understanding, remembering, or applying information, (2) interacting with others, (3) the ability to concentrate, persist, or maintain pace, and (4) the ability to adapt or manage oneself. *Id.*

6

The Supreme Court has explained that the purpose of the Listings is to streamline the administrative process by identifying impairments that are so severe they would always be found disabling. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (noting that step three "streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."). It is a higher level of severity than the statutory standard. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To satisfy the burden of proving that an impairment matches a Listing, the claimant must demonstrate that the impairment meets all of the specified medical criteria. *Zebley*, 493 U.S. at 530. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.* The responsibility for determining whether Plaintiff met or equaled a listing is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2).

As noted above, the ALJ found at step three that Plaintiff did not have an impairment or combination of impairments. Listing 12.03 requires that a claimant must have either an extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning listed above. The regulations explain that, for a limitation to be considered "mild," a claimant's functioning must be only affected "slightly." *See* 20 C.F.R. Subpt. P, App. 1, 12.00E, F(2). For a limitation to be considered "moderate," a claimant's functioning must be "fair." *Id.* For a limitation to be considered "marked," a claimant's functioning must be considered "seriously limited." *Id.* For a limitation to be "extreme," a claimant is not able to function independently, appropriately, effectively, and on a sustained basis. *Id.*

7

Plaintiff advances several arguments to support her contention that she meets Listing 12.03.  Plaintiff argues that the ALJ relied on legal error to find that Plaintiff had only mild limitations in adapting and managing herself, which is specifically defined under the regulations:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.  These examples illustrate the nature of this area of mental functioning.  We do not require documentation of all of the examples.

20 C.F.R. Part 404, Subpt P, App'x 1(G)(3)(b)(iv).

The ALJ found that Plaintiff had moderate limitations in the domain of understanding, remembering, or applying information, marked limitations in the domain of interacting with others, moderate limitations in the domain of concentrating, persisting, or maintaining pace, and mild limitations in the domain of adapting or managing oneself.  (Rec. doc. 11 at 20-21). After reviewing the pleadings and the evidence, the Court concludes that the ALJ properly determined that the requirements of Listing 12.03 were not met.  (*Id.* at 21); 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.03.

In this case, the ALJ considered Plaintiff's subjective report of difficulty handling stress and changes in routine but found it significant that Plaintiff could drive and go out alone, and that Plaintiff was the sole caretaker of her three minor children.  (Rec. doc. 11 at 20-21, 338-41).  At the consultative psychological evaluation, Plaintiff reported that she had

8

a 16 year-old daughter, a nine year-old son diagnosed as autistic, and a seven year-old son, and that she survived on disability checks for her daughter and son. (*Id.* at 750-51).

Plaintiff contends that the ALJ did not acknowledge that Plaintiff indicated that she only traveled outside the home "twice a month if that," that her children perform the chores, and that she needs her children to tell her to care for her personal needs and to groom in a Function Report dated August 19, 2018. (*Id.* at 341); (*see also* Rec. doc. 15-1 at 15). However, Plaintiff drove herself independently to the consultative psychological evaluation in May 2019 and reported that she was able to shop for her activities of daily living. (Rec. doc. 11 at 750). Plaintiff also argues that the ALJ "mischaracterized" her activities of daily living, including whether Plaintiff was able to care for her mother. (*Id.* at 25); (Rec. doc. 15-1 at 12-13). But it is entirely appropriate for the ALJ to consider a claimant's activities of daily living in evaluating her subjective complaints and in assessing her RFC. *See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995). Moreover, the ALJ actually noted that Plaintiff reported feeling overwhelmed caring for her mother. (Rec. doc. 11 at 24).

Plaintiff maintains that the ALJ failed to fully develop the record to reveal why Plaintiff was no longer living with her mother. Plaintiff testified that she only lived with her children at the hearing on June 10, 2021. (*Id.* at 47). It is axiomatic that an ALJ has a duty to develop the facts fully and fairly relative to a claim for disability benefits. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Kane v. Heckler*, 731 F.2d 1210, 1219 (5th Cir. 1984). The Supreme Court has described Social Security administrative proceedings as "inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Thus, "[i]t is the ALJ's duty to investigate the facts and develop

9

the arguments both for and against granting benefits . . . ." *Id.* at 111. The ALJ's obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedure appears before him. *Kane*, 731 F.2d at 1219 (citing *Clark v. Harris*, 638 F.2d 1347, 1351 (5th Cir. 1981)). This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire about, and explore for all relevant facts." *Kane*, 731 F.2d at 1219-20; *Bowling v. Shalala*, 36 F.3d at 437.

Her, as the ALJ duly noted, Plaintiff was represented by legal counsel. (Rec. doc. 11 at 16, 42). Therefore, no "heightened duty to scrupulously and conscientiously explore all relevant facts" arose. *See Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003) (per curiam); *see, e.g., Isbell v. Colvin*, No. 1:14-CV-006-C, 2015 WL 1208122, at *3 n.1 (N.D. Tex. Mar. 16, 2015) (noting that the ALJ did not have a heightened duty to develop the record when the claimant was represented by counsel). It is well-established law that the burden lies with the claimant to prove disability. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Although Plaintiff alleges that she had difficulties during this time, the ALJ properly considered evidence that Plaintiff's mental-status examinations generally showed assessments of fair, intact, or good insight, and judgment. (*Id.* at 21, 434, 752, 758, 766, 774, 819, 829).

Plaintiff has the burden of proof to establish disability, and if she does not provide sufficient evidence, the ALJ must rely on the available evidence. *See* 20 C.F.R. § 416.912(a)(1); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (holding that the claimant has the burden of proof in establishing disability). Although the ALJ is required to develop a reasonably complete record, he is not required to act as Plaintiff's counsel. The

10

Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless Plaintiff can show that she was prejudiced by the ALJ's failure to do so. To establish prejudice, Plaintiff must demonstrate that she could and would have adduced evidence that might have altered the result. *See Castillo* 325 F.3d at 552-53; *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Plaintiff has not done this, as demonstrated by her failure to present additional evidence to the Appeals Council. (Rec. doc. 11 at 426-29). "To show such prejudice a Plaintiff must present more than mere speculation." *Beggs v. Colvin*, No. 4:14-CV-129-O, 2015 WL 5542540, at *8 (N.D. Tex. Aug. 31, 2015), *report and recommendation adopted*, No. 4:14-CV-00129-O, 2015 WL 5547010 (N.D. Tex. Sept. 15, 2015). This Court finds that Plaintiff has failed in her attempt to create an error of record development on appeal.

Neither does this Court find merit to Plaintiff's claim that the ALJ should have found that her alleged "severe pica disorder and towel consumption" in January and July 2020 merited a finding of marked limitation in the domain of adapting or managing oneself. (Rec. doc. 11 at 823, 912-13). Plaintiff's physical examination in July 2020 does not document any functional limitations because, other than poor dentition, she was not in acute distress, appeared well-developed, and had normal findings for her physical examination. (*Id.* at 916). In addition, she was alert and oriented to person, place, and time, and had normal mood, behavior, and thought content . (*Id.* at 916-17). The ALJ also considered records from May 2021 when Plaintiff presented as pleasant and cooperative; her mental status revealed that she was alert and oriented times three; she had fluent language and good comprehension;

11

and the physical examination showed normal physical findings. (*Id.* at 1184). The ALJ recognized that she was counseled regarding diet and exercise changes. (*Id.* at 23, 1185).

Moreover, despite Plaintiff's subjective complaints of issues with sleeping, the record does not establish that Plaintiff had a marked limitation in the domain of adapting and managing oneself. Plaintiff denied having a history of decreased sleep at the consultative evaluation in May 2019, and in fact, she reported that she spent her spare time sleeping in bed. (*Id.* at 751-52). In addition, the examiner stated that Plaintiff performed well ("OK") with cognitive tests during a mental status examination. (*Id.* at 752). And even though Plaintiff reported issues with sleeping in April, May, and August 2019, her mental-status exams showed that she was well-groomed and clean; she was cooperative and had eye contact; her speech was fluent, clear, and of normal volume; she was oriented to situation, time, place, and person and alert; and her memory was intact. (*Id.* at 829, 852, 862). In addition, Plaintiff was counseled on good sleep habits and patterns (such as avoiding "alcohol, caffeinated beverages, and nicotine products for at least 6 hours prior to bedtime"). (*Id.* at 829, 834). The Court finds that the ALJ correctly concluded that there are no functional limitations related to Plaintiff's sleeping.

Contrary to plaintiff's argument, her cousin's statement from June 2021 does not contradict the ALJ's findings that Plaintiff has only a mild limitation in the domain of adapting or managing herself. (*Id.* at 425). The Fifth Circuit leaves to the ALJ the determination of the "credibility of . . . experts as well as lay witnesses" and to weigh their opinions and testimony accordingly. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *see also Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Kane*, 731 F.2d at 1219. The ALJ correctly credited

Plaintiff's cousin's statement as evidence of antisocial behavior when she concluded that Plaintiff had marked limitation in the domain of interacting with others. (*Id.* at 20). The ALJ then stated:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(*Id.* at 21). In the RFC assessment, the ALJ stated: "[Plaintiff] can tolerate occasional contact with supervisors and coworkers, and cannot work in groups larger than 10 people. Contact with the public must be incidental to the work being performed." (*Id.* at 21). The ALJ's finding of mild and moderate limitation in the other three domains corresponds to the ALJ's determination that Plaintiff "can engage in work involving simple/routine tasks in a low stress work environment (*i.e.*[,] involving occasional decision-making and occasional adaptation to workplace changes)." (*Id.* at 21).

The Court finds that Plaintiff's argument concerning Nurse Practitioner Brittany Tucker's August 15, 2019 check-box list opinion is also unavailing. (Tr. 774-87). Plaintiff devotes nearly four pages of her memorandum in support of summary judgment discussing Tucker's evaluation. (Rec. doc. 15-1 at pp. 8-11, 13). As noted in the ALJ's decision, the ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 416.920c, which apply to claims that were filed after March 27, 2017, such as Plaintiff's claim, filed on February 5, 2019. (Rec. doc. 11 at 18, 21, 268); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No.

20-54, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 416.920c, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 416.920c(a).

In addition, a medical assessment that diagnoses and observes a patient but does not opine on what the patient can do is *not* a "medical opinion." *See Winston*, 755 F. App'x at 402-03 (concluding that "a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions") (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017)). In Plaintiff's case, Tucker's opinion suffers from defects similar to the physical examination in *Winston* because it was not supported by any narrative explanation other than the diagnoses and symptoms. *See id.* ("Upon reviewing Dr. Davis's medical evaluation, this court concurs with the Commissioner. Dr. Davis's evaluation makes 'judgments about the nature and severity' of Winston's 'symptoms, diagnosis and prognosis,' but it does not opine on 'what [Winston] can still do despite [her] impairment(s), and [her] physical or mental restrictions.'" (citing 20 C.F.R. § 404.1527(a)(2)).

Having reviewed the regulations, the Court finds that the definition of a "medical opinion" was also revised for claims filed post-March 2017. Statements from a medical source that reflect judgments about a claimant's diagnosis and prognosis are no longer considered medical opinions because they do not necessarily provide perspectives on the claimant's functional abilities and limitations. 20 C.F.R. § 416.913(a)(2),(3); *see also* 81 Fed.

14

Reg. at 62562. For claims filed on or after March 27, 2017, the regulations contain a more detailed definition of medical opinion:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2)(i)(A)-(D). It has long been held that a check-box form without further explanation of evidence of functional limitations should be rightfully discounted in a review of social security benefits. *See DeJohnette v. Berryhill*, 681 F. App'x. 320, 321-22 (5th Cir. 2017). The Fifth Circuit has held that check-the-box questionnaires typify the "brief and conclusory" statements that an ALJ may disregard. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations. . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.").

15

The ALJ found that Tucker's August 15, 2019 opinion that Plaintiff had moderate limitations in activities of daily living, marked limitations in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and three episodes of decompensation was "partially persuasive to [her administrative] decision because the limitations on page 10 of the opinion are supported by treatment records (see Exhibits 10F; 15F) and are consistent with the overall evidence, particularly with regard to the claimant's social limitations." (Adm. Rec. at 25). The ALJ then back-tracked on her opinion of Tucker's testimony:

> The portions of the opinion in which NP Tucker stated the claimant would miss four or more days of work per month and found the claimant had marked limitations in all areas of functioning (see pages 10 through 13 of the opinion) were not persuasive, because they are internally inconsistent and inconsistent with the evidence of generally normal activities of daily living.

(*Id.* at 25). Plaintiff claims that the ALJ should have credited Tucker's opinion based on the symptoms checked and the Global Assessment of Functioning ("GAF") score of 34. (*Id.* at 774). However, as noted above, listed symptoms in and of themselves are not sufficient.

The GAF "is a 100–point scale used to report the clinician's judgment of the individual's overall level of psychological, social and occupational functioning." *Locure v. Colvin*, Civ. A. No. 14-1318, 2015 WL 1505903, at *8 n. 5 (E.D. La. Apr. 1, 2015). It is well established that a claimant's GAF scores "are not determiners of an ability or inability to work." *McMurray v. Colvin*, Civ. A. No. G-16-017, 2017 WL 978706, at *4 (S.D. Tex. Mar. 14, 2017) (citations omitted). The Commissioner does not endorse the use of GAF scores to determine disability, and federal courts have likewise declined to find a strong correlation between a claimant's GAF score and the ability to work. *See Revised Medical Criteria for*

16

*Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (explaining that a claimant's GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"); *Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015) ("[F]ederal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work."). Indeed, in the updated version of the Diagnostic and Statistical Manual of Mental Disorders, the American Psychiatric Association no longer recommends the use of the GAF scale as a diagnostic tool for assessing a patient's functioning due to its "conceptual lack of clarity and questionable psychometrics in routine practice." *Spencer v. Colvin*, No. EP-15-CV-0096, 2016 WL 1259570, at *6 n. 8 (W.D. Tex. Mar. 28, 2016) (quotation marks, citation, and ellipsis omitted). The Court finds that given the revision to the regulations for claims filed post-March 2017 that revised regulations changed the definition of a "medical opinion," GAF scores are not determinative medical opinions.

Moreover, Plaintiff fails to address the ALJ's consideration of Tucker's opinion as it related to the opinions from the State Agency medical consultants. The ALJ stated:

> In June 2019, Lisa Swisher, Ph.D., reviewed the claimant's record in connection with the initial determination in this case and opined she could understand, recall and perform simple tasks (1-2 steps); focus for two hour periods with routine breaks, and pace and persist for an eight-hour workday and 40-hour workweek despite psychological symptoms; interact with coworkers and supervisors to learn tasks and accept criticism but not tolerate frequent interactions or the need for frequent cooperation to complete work tasks; interact appropriately or tolerate contact with the public; and adapt to work setting and some changes in the work setting (Exhibits 2A; 9F). In September 2019, Lynette Causey, Ph.D., reviewed the evidence at the reconsideration determination and affirmed Dr. Swisher's opinion (Exhibit 4A). These opinions are persuasive to this decision because they are supported by the authors' full review of the evidence, and they are generally consistent with the

17

overall evidence, which reflects generally normal functioning and minimal treatment despite significant mental health symptoms.

(*Id.* at 25, 78-81, 84-85, 91-922, 97-99, 102-04, 754). Specifically, in keeping with the ALJ's and this Court's findings, Causey considered Tucker's opinion but found that the evidence as a whole did not establish disability because Plaintiff had only mild-to-moderate limitations in functioning. (*Id.* at 91, 99, 104). Neither State Agency medical consultant found that Plaintiff's mental impairments met or equaled a Listing. This evidence supports the ALJ's determination that Plaintiff's mental impairments did not meet or medically equal Listing 12.03. Plaintiff's argument that she met a Listing based on Tucker's opinion fails. The Court concludes that the ALJ properly determined the severity of the four domains and found that Plaintiff did not meet or equal Listing 12.03 but instead found that Plaintiff retained the RFC to perform work and was not disabled. Substantial record evidence supports the ALJ's findings.

## VI. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[1]

New Orleans, Louisiana, this 17th day of November, 2022.

                                      **MICHAEL B. NORTH**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.